**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., as purchaser of the loans and other assets of WASHINGTON MUTUAL BANK, formerly known as WASHINGTON MUTUAL BANK, FA from the FEDERAL DEPOSIT INSURANCE CORPORATION, acting as receiver for Washington Mutual Bank, FA and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C.§ 1821(d), | Civil Action<br><br>Case No.:  08-02154-VM<br><br><br>**SECOND AMENDED COMPLAINT -**<br>**Jury Trial Demanded** |
| Plaintiff, | |
| v. | |
| LAW OFFICE OF ROBERT JAY GUMENICK, P.C., ROBERT JAY GUMENICK, SUCCESSFUL TITLE AGENCY, LLC., CHICAGO TITLE INSURANCE COMPANY, JOSEPH KOHEN, and JEROME SHAPIRO, | |
| Defendants. | |

Plaintiff, JPMorgan Chase Bank, N.A., as purchaser of the loans and other assets of

Washington Mutual Bank, formerly known as Washington Mutual Bank, FA from the Federal

Deposit Insurance Corporation, acting as receiver for Washington Mutual Bank, FA and pursuant

to its authority under the Federal Deposit Insurance Act, 12 U.S.C.§ 1821(d), by way of First

Amended Complaint ("Complaint") against the defendants, Law Office of Robert Jay Gumenick,

P.C., Robert Jay Gumenick, Successful Title Agency, LLC., and Chicago Title Insurance

Company avers as follows:

### **THE PARTIES**

1.      Plaintiff, JPMorgan Chase Bank, N.A., as purchaser of the loans and other assets

of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA from the Federal

Deposit Insurance Corporation, acting as receiver for Washington Mutual Bank, FA and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C.§ 1821(d) (at all times relevant hereto, "WaMu"), is a federally chartered savings association with its home office located at 1111 Polaris Parkway, Columbus, Ohio, 43240-2031.

2.      Defendant, Law Office of Robert Jay Gumenick, P.C. ("Law Office") is, upon information and belief, a corporation organized and existing under the laws of the State of New York with its principal place of business located at 160 Broadway, Suite 1100, New York, New York, 10038.

3.      Defendant, Robert Jay Gumenick ("Gumenick") is, upon information and belief, a resident of the State of New York with an address at 418 State St., Brooklyn, New York, 11217.

4.      The Law Office and Gumenick may, at times, be referred to herein collectively as the "Defendant."

5.      Defendant, Successful Title Agency, LLC.,  ("Successful") is a title insurance agency maintaining an address at 809 River Avenue, Lakewood, New Jersey 08701.

6.      Defendant, Chicago Title Insurance Company ("Chicago Title"), is a title insurance company maintaining an address at 601 Riverside Avenue, Jacksonville, Florida 32204.

7.      Upon information and belief, Third-Party Defendant, Joseph Kohen ("Kohen") is an adult individual maintaining a residence at 218 Overlook Avenue, Long Branch, New Jersey 07740.

8.      Upon information and belief, Third-Party Defendant, Jerome Shapiro ("Shapiro") is an adult individual, and an attorney, maintaining a residence at 23 Ridge Road, Long Branch, New Jersey 07764.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and arises between citizens of different States.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), as the Law Office resides in this District and Gumenick is a citizen of the State of New York.

## FACTUAL BACKGROUND

11.     Gumenick is a licensed attorney and, at all times relevant hereto, was the sole attorney employed by the Law Office.

12.     The Defendant represented WaMu in connection with the closing of commercial loans, including, but not limited to, (i) commercial loan number 714123882 (the "Norwood Loan"); and (ii) commercial loan number 625307981 (the "Hartford Loan").

## THE NORWOOD LOAN

13.     The terms of the Defendant's retention agreement with WaMu are set forth in a master engagement agreement (the "Agreement") dated January 24, 2006.

14.     Pursuant to the terms and conditions of the Agreement, the Defendant agreed to provide WaMu with, *inter alia* the following continuing and related legal services:

     a.     Provide WaMu with a closing protection letter from the title company issuing title insurance on each loan;

     b.     Review the loan documents for accuracy, make any changes requested or approved by WaMu and supervise the execution of such documents by the borrower;

     c.     Attend the closing and review title, survey and the ALTA policy delivered

3

by the borrower to confirm that WaMu is in a first lien position upon recordation of the mortgage;

d.    Prepare the necessary closing statement disbursing proceeds of the loan for execution by the borrower;

e.    Coordinate the disbursement of all loan proceeds, lien payoff amounts and third party fees;

f.    Assemble the final loan documents, prepare required transmittal letters and return the original documents to WaMu together with copies of all documents sent for recording within 24 hours of disbursement;

e.    Cause all necessary documents relating to the subject loan to be recorded and/or filed, if applicable, and the title policy to be issued and delivered to WaMu.

15.    Prior to the Norwood Loan, the Defendant represented WaMu as legal counsel in connection with commercial loans (the "Dwek Loans") to New Jersey borrowers (the "Dwek Borrowers") who were represented by the law firm of Ansell, Zaro, Grimm & Aaron (the "Ansell Firm").

16.    The Norwood Loan,  in the principal amount of $1.8 million, was to be evidenced by a promissory note from the borrower, 1001 Norwood, LLC (the "Norwood Borrower"), and secured by commercial property known commonly as 1001 Norwood Avenue, Long Branch, New Jersey (the "Norwood Property").  The mortgage evidencing such security may be referred to hereinafter as the "Norwood Mortgage."

17.    At the outset of the transaction, the Norwood Borrower was represented by Jason Klein of the Ansell Firm.

18.    On or about April 4, 2006, three (3) days prior to the closing of the Norwood

Loan, Defendant was told by an individual identifying himself to the Defendant over the phone

as Joey Kohen ("Kohen") that an attorney named Jerome Shapiro ("Shapiro") would be

representing the Norwood Borrower instead of the Ansell Firm.

19.    Defendant was further told by Kohen that a different title agency, Successful

Title, would be involved in the closing of the transaction, instead of Metropolitan Abstract, LLC,

with whom Defendant had previously been working.

20.    Defendant had no prior dealings with or knowledge of Kohen or Shapiro.

21.    Defendant did not conduct any investigation regarding the circumstances

underlying the alleged transfer of the file from the Ansell Firm to Shapiro three (3) days in

advance of the date of closing or the change of title agencies.

22.    Through the date of closing of the Norwood Loan on April 7, 2006, Defendant

communicated principally with Kohen who, upon information and belief, never worked for

Shapiro.

23.    On April 7, 2006, the Norwood Property was owned of record by an entity known

as Dwek Properties, LLC.

24.    On April 7, 2006, the Norwood Property was subject to the following mortgage

liens:

    i.    Mortgage and Security Agreement made by Dwek Properties, LLC, to
Amboy National Bank, dated May 20, 2004 and recorded June 4, 2004 in
OR Book 8368 page 7929, to secure the principal amount of $1,650,000
("Amboy Mortgage");

    ii.    Mortgage and Security Agreement made by the Jemar Enterprises, LLC,
Corbett Holdings I, LLC, 1111 Eleventh Avenue, LLC, *Dwek Properties,
LLC*, Belmar Gas, LLC, Dwek Assets, LLC, Route 33 Medical, LLC,
Water View Offices, LLC, Dwek Apartments, LLC, WLB Highway, LLC,
Berkeley Heights Gas, LLC, Myrtle Avenue Land, LLC and 170 Broad
Street, LLC (the "Multi-Property Borrowers") to BRT Realty Trust, dated

December 22, 2005 and recorded January 3, 2006 in OR Book 8530 page 708, to secure the amount of $7,000,000 ("BRT Mortgage").

25.    Defendant was fully aware of the record of title as of April 7, 2006, having reviewed numerous title documents from Successful and others.

26.    On or about April 7, 2006, Defendant received closing instructions from WaMu requiring, *inter alia*, the Defendant to procure a title policy evidencing fee simple title to the Norwood Property in the name of the Norwood Borrower and insuring the Norwood Mortgage as a first mortgage lien against the Norwood Property.

27.    At the time of the closing, the Amboy Mortgage and the BRT Mortgage remained liens of record against the Norwood Property (collectively, the "Senior Liens").

28.    At no point did Defendant confirm with the lenders whether the Senior Liens were in fact paid and released.

29.    Defendant did not obtain discharges of mortgages on the Senior Liens or letters of intent to discharge liens from the lenders or anyone else on the Senior Liens.

30.    Defendant did not obtain a deed or any other evidence of title to the Norwood Property being in the name of the Norwood Borrower as of closing.

31.    On the date of closing, Defendant received faxed wiring instructions ("Wiring Instructions") purportedly from Shapiro's law office.

32.    The Wiring Instructions were typed by an unidentified individual on a one page, unsigned document.

33.    The Wiring Instructions indicated that the closing funds were to be wired to a Wachovia Bank account in the name of "Jerome Shapiro O.M.I." (the "Wachovia Account").

34.    Defendant conducted no inquiry regarding the Wachovia Account including, but not limited to, whether or not the account was in fact Shapiro's attorney trust account.

6

35.    Defendant did not obtain a closing protection letter reflecting Shapiro as the Norwood Borrower's attorney or as a covered agent of the title insurer, Chicago Title, for purposes of closing the loan.

36.    On April 7, 2006, WaMu wired closing funds (the "Norwood Closing Proceeds") in the amount of $1,792,312.40 to an attorney account maintained by the Defendant with Chase Bank.

37.    At Defendant's instruction, the Norwood Closing Proceeds were then wired from Chase Bank to the Wachovia Account.

38.    Defendant made no further inquiry with Shapiro or otherwise regarding the Norwood Closing Proceeds on the Norwood Loan once such proceeds left Defendant's account.

39.    Defendant is unable to account for the disposition of the closing proceeds on the Norwood Loan subsequent to the funds leaving its account.

40.    Upon information and belief, Shapiro did not receive the Norwood Closing Proceeds.

41.    At no time did Defendant make inquiry to determine whether an insurance premium had been paid or advise WaMu that the premium had not been paid.

42.    No title insurance premium was paid in connection with the Norwood Loan.

43.    The Senior Liens were not paid in connection with the Norwood Loan but continue to remain prior liens on the Norwood Property.

44.    A mortgage, signed by the Norwood Borrower in favor of WaMu, was subsequently recorded as a third mortgage lien against the Property in the Monmouth County Clerk's Office on May 11, 2006, in Book OR8562, page 4037 (the "Norwood Mortgage").

45.     Subsequent to closing, Defendant made no independent inquiry regarding the issuance of a title policy on the Norwood Loan insuring title in the name of the Norwood Borrower or the Norwood Mortgage as a first lien against the Norwood Property.

46.     Defendant took no further action on behalf of WaMu to obtain the issuance of title insurance in connection with the Norwood Loan.

47.     No title policy has been issued in connection with the Norwood Loan.

48.     Title to the Norwood Property remains vested in Dwek Properties, LLC.

49.     Defendant received attorneys' fees for closing the Norwood Loan which he paid himself from the Norwood Closing Proceeds.

## THE HARTFORD LOAN

50.     The Hartford Loan, in the principal amount of $1.7 million, was to be evidenced by a promissory note from the borrower, Hartford LLC (the "Hartford Borrower"), and secured by commercial property known commonly as 175-183 Sigourney Street, Hartford, Connecticut (the "Hartford Property").

51.     Section 8 of the promissory note evidencing the Hartford Loan specifically sets forth that the Hartford Loan was to be secured by "a deed of trust, security agreement, assignment of leases and rents, and fixture filing or a mortgage, security agreement, assignment of leases and rents, and fixture filing . . . executed by Borrower [the Hartford Borrower], encumbering the real property described in the Security Instrument [the Hartford Property] . . ." (the "Hartford Mortgage").

52.     As of the date of closing of the Hartford Loan, July 29, 2004 (the "Hartford Closing Date"), the Hartford Property was owned of record by the Hartford Borrower.

53.    As of the Hartford Closing Date, the record of title reflected that the Hartford

Property was subject to the following mortgage liens:[1]

      i.    Mortgage to Hoffman Family LP and Norman Seidenfeld, Esq., as
Nominee, dated November 14, 2002 and recorded November 21, 2002 in
Volume 4657 page 216 in the records of County of Hartford, State of
Connecticut, to secure the principal amount of $400,000, as modified by
Modification Agreement dated June 11, 2003 and recorded November 18,
2003 in Volume 4899 page 101 in the records of County of Hartford, State
of Connecticut (purportedly released by satisfaction pieces dated March
16, 2005 and March 16, 2006 in Volume 5284 page 342 and Volume 5672
page 7 in the records of County of Hartford, State of Connecticut,
respectively) (the "First Seidenfeld Mortgage"); and

      ii.    Second Mortgage to Norman Seidenfeld, Esq., as Nominee, dated
November 7, 2003 and recorded November 18, 2003 in Volume 4899
page 104 in the records of County of Hartford, State of Connecticut, to
secure the principal sum of $174,000 (purportedly released by satisfaction
pieces dated March 17, 2005 and March 16, 2006 in Volume 5284 page
345 and 5672 page 9 in the records of County of Hartford, State of
Connecticut, respectively) (the "Second Seidenfeld Mortgage").

54.    Prior to Hartford Closing Date, WaMu sent to Defendant certain closing

instructions (the "Hartford Closing Instructions").

55.    Defendant signed and acknowledged receipt of the Hartford Closing Instructions

on July 27, 2004.

56.    The Hartford Closing Instructions required, *inter alia*, the Defendant to (i)

provide WaMu with a full copy of the signature and notary pages of the Hartford Mortgage and

send the original Hartford Mortgage to the clerk of Hartford County, State of Connecticut, for

recordation; and (ii) procure a title policy, in the amount of $1,870,000, evidencing fee simple

title to the Hartford Property in the name of the Hartford Borrower and insuring the Hartford

Mortgage as a first mortgage lien against the Hartford Property.

---

[1] Subsequently, the holders of these two mortgage liens to which the Hartford Property had previously been subject,
and which mortgage liens had apparently been satisfied pursuant to mortgage releases recorded in 2005, and 2006,
respectively, have now filed and recorded an affidavit certifying that such mortgage releases were not executed by
the mortgagees or their respective agents, and are ineffective.

57.     On the Hartford Closing Date, WaMu wired closing funds (the "Hartford Closing Proceeds") in the amount of $1,699,722.88 to an attorney account maintained by the Defendant with Chase Bank.

58.     The disbursement statement, signed by the Hartford Borrower, in connection with the closing of the Hartford Loan, reflects that the sum of $600,000 was wired to Hoffman Family LP.  Upon information and belief, this sum was paid in satisfaction of the Hartford Borrower's indebtedness underlying the (i) the First Seidenfeld Mortgage; and (ii) the Second Seidenfeld Mortgage.

59.     Contrary to the Hartford Closing Instructions, Defendant failed to secure the recordation of the Hartford Mortgage in the records of County of Hartford, State of Connecticut.

60.     The Hartford Mortgage was never recorded in the records of County of Hartford, State of Connecticut.

61.     Upon information and belief, subsequent to closing, Defendant made no independent inquiry regarding the status of the recordation of the Hartford Mortgage in the records of County of Hartford, State of Connecticut.

62.     Upon information and belief, subsequent to closing, Defendant made no independent inquiry regarding the recorded satisfaction and discharge of the First Seidenfeld Mortgage and Second Seidenfeld Mortgage as liens upon the Hartford Property.

63.     As reflected in a title search dated February 18, 2009 (the "2009 Title Search"), the Hartford Property was subject to at least one mortgage lien:

      i.     Permanent Open End Mortgage Deed and Security Agreement to BRT Realty Trust, dated July 11, 2008 and recorded February 13, 2009 in Volume 6188 page 1 in the records of County of Hartford, State of Connecticut, to secure the principal amount of $2,300,000.

64.     The 2009 Title Search also reflects that the Hartford Property may be subject to (i) the First Seidenfeld Mortgage; and (ii) the Second Seidenfeld Mortgage, the nature of which liens appears to be in dispute (See [Footnote 1] of this Complaint).

65.     The 2009 Title Search makes no mention whatsoever of the Hartford Mortgage, or of any lien on the Hartford Property in favor of WaMu.

66.     Upon information and belief, subsequent to closing, Defendant made no independent inquiry regarding the issuance of a title policy on the Hartford Loan insuring title in the name of the Hartford Borrower or the Hartford Mortgage as a first lien against the Hartford Property.

67.     Upon information and belief, Defendant took no further action on behalf of WaMu to obtain the issuance of title insurance in connection with the Hartford Loan.

68.     Upon information and belief, no title policy has been issued in connection with the Hartford Loan.

69.     Upon information and belief, title to the Hartford Property remains vested in Hartford LLC.

70.     Defendant received attorneys' fees for closing the Hartford Loan which he paid himself from the Hartford Closing Proceeds.

### FIRST COUNT - LEGAL MALPRACTICE (NEGLIGENCE)
### (Norwood Loan)

71.     The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

72.     At all times relevant herein, the Defendant represented WaMu as its legal counsel pursuant to the Agreement.

73.     Defendant owed WaMu a duty of due care in representing the interests of WaMu as its legal counsel in connection with the Norwood Loan and otherwise.

11

74.     Defendant was negligent in its representation of WaMu in connection with the Norwood Loan, and otherwise, as a result of its numerous breaches of the duty of due care it owed to WaMu.

75.     Defendant's breaches of due care include, but are not limited to, the following:

i.      Failing to obtain a deed and/or other adequate assurance that the Norwood Borrower was the title owner of the Norwood Property;

ii.     Failing to ensure that the Norwood Mortgage was a first mortgage lien against the Norwood Property;

iii.    Releasing the Norwood Closing Proceeds from Defendant's attorney account contrary to the Agreement between Defendant and WaMu and contrary to WaMu's closing instructions;

iv.     Failing to obtain a title policy insuring the Norwood Borrower as the owner of the Norwood Property and the Norwood Mortgage as a first lien against the Norwood Property;

v.      Failing to ensure that a title policy premium was paid;

vi.     Failing to obtain and provide WaMu with a closing protection letter naming Shapiro as counsel for the Norwood Borrower;

vii.    Failing to close the Norwood Loan in accordance with WaMu's closing instructions and the Agreement;

viii.   Taking actions, or refraining from taking actions, without permission or approval of an authorized representative of WaMu;

ix.     Failing to maintain required insurance coverage and bond coverage as required by the Agreement;

x.      Failing to provide WaMu with competent legal advice and representation;

xi.     Providing WaMu with incorrect, inconsistent and incomplete legal advice;

xii.    Providing WaMu with advice contrary to the legal and economic interests of WaMu;

xiii.   Failing to adopt and implement competent procedures as closing counsel for WaMu;

xiv.    Failing to provide WaMu with competent and appropriate remedial advice to known adverse issues;

xv.    Failing to take competent and appropriate remedial actions on behalf of WaMu to known adverse issues;

xvi.   Otherwise failing to provide competent legal counsel and advice in representing the interests of WaMu in connection with the Norwood Loan.

76.    As a direct and proximate result of, but not limited to, these actions, failures, breaches, and omissions of the Defendant, WaMu has sustained and continues to sustain substantial damages.

WHEREFORE, Plaintiff, JPMorgan Chase Bank, N.A., as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA from the Federal Deposit Insurance Corporation, acting as receiver for Washington Mutual Bank, FA and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C.§ 1821(d), demands judgment against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, jointly, severally and/or in the alternative for:

i.     compensatory damages,

ii.    consequential damages,

iii.   incidental damages,

iv.    pre and post-judgment interest,

v.     attorneys fees', costs, and

vi.    such other and further relief as the Court deems appropriate.

## SECOND COUNT - BREACH OF CONTRACT
### (Norwood Loan)

77.    The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

78.    Defendant agreed to represent WaMu as its legal counsel in connection with the Norwood Loan.

79.    The Agreement sets forth the terms of the engagement including, but not limited to, those terms set forth in paragraph 10 of this Complaint.

80.    Defendant received compensation for his services under the Agreement.

81.    Defendant breached the terms of the Agreement as a result of, but not limited to, those breaches set forth in paragraph 71 of the First Count of this Complaint.

82.    As a direct and proximate result of the aforesaid breaches by Defendant of the Agreement, WaMu has incurred, and continues to incur substantial damages.

WHEREFORE, Plaintiff, JPMorgan Chase Bank, N.A., as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA from the Federal Deposit Insurance Corporation, acting as receiver for Washington Mutual Bank, FA and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C.§ 1821(d), demands judgment against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, jointly, severally and/or in the alternative for:

      i.    compensatory damages,

      ii.    consequential damages,

      iii.    incidental damages,

      iv.    pre and post-judgment interest,

      v.    attorneys' fees, costs, and

      vi.    such other and further relief as the Court deems appropriate.

## THIRD COUNT- BREACH OF FIDUCIARY DUTY
### (Norwood Loan)

83.    The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

84.    Defendant agreed to represent WaMu as its legal counsel in connection with the Norwood Loan.

85.     As legal counsel to WaMu, Defendant owed a fiduciary duty to WaMu at all times relevant to this matter.

86.     Defendant violated that fiduciary duty as a result of, but not limited to, those breaches set forth in paragraph 71 of the First Count of this Complaint.

87.     Defendant's breaches have directly and proximately caused harm to WaMu.

88.     Defendant's actions, and omissions, were careless, reckless and without regard for WaMu's rights as its client.

WHEREFORE, Plaintiff, JPMorgan Chase Bank, N.A., as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA from the Federal Deposit Insurance Corporation, acting as receiver for Washington Mutual Bank, FA and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C.§ 1821(d), demands judgment against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, jointly, severally and/or in the alternative for:

      i.     compensatory damages,

      ii.    punitive damages,

      iii.   consequential damages,

      iv.   incidental damages,

      v.    pre and post-judgment interest,

      vi.   attorneys' fees, costs, and

      vii.  such other and further relief as the Court deems appropriate.

## FOURTH COUNT - LEGAL MALPRACTICE (NEGLIGENCE)
### (Hartford Loan)

89.     The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

90.     At all times relevant herein, the Defendant represented WaMu as its legal counsel in connection with the Hartford Loan.

91.     Defendant owed WaMu a duty of due care in representing the interests of WaMu as its legal counsel in connection with the Hartford Loan and otherwise.

92.     Defendant was negligent in its representation of WaMu in connection with the Hartford Loan, and otherwise, as a result of its numerous breaches of the duty of due care it owed to WaMu.

93.     Defendant's breaches of due care include, but are not limited to, the following:

    i.     Failing to ensure that the Hartford Mortgage was recorded in the records of County of Hartford, State of Connecticut;

    ii.    Failing to ensure that the Hartford Mortgage was recorded as a first mortgage lien against the Hartford Property;

    iii.   Failing to secure the discharge of prior liens against the Hartford Property, including, without limitation, the First Seidenfeld Mortgage and Second Seidenfeld Mortgage;

    iv.   Causing the release and disbursement of the Hartford Closing Proceeds contrary to the terms and conditions set forth in the Hartford Closing Instructions;

    v.    Failing to obtain a title policy insuring the Hartford Borrower as the owner of the Hartford Property and the Hartford Mortgage as a first lien against the Hartford Property;

    vi.   Failing to ensure that a title policy premium was paid;

    vii.   Failing to close the Hartford Loan in accordance with WaMu's Hartford Closing Instructions;

    viii.  Taking actions, or refraining from taking actions, without permission or approval of an authorized representative of WaMu;

    ix.   Failing to provide WaMu with competent legal advice and representation;

    x.    Providing WaMu with incorrect, inconsistent and incomplete legal advice;

    xi.   Providing WaMu with advice contrary to the legal and economic interests of WaMu;

xii.    Failing to adopt and implement competent procedures as closing counsel for WaMu;

xiii.   Failing to provide WaMu with competent and appropriate remedial advice to known adverse issues;

xiv.    Failing to take competent and appropriate remedial actions on behalf of WaMu to known adverse issues;

xv.     Otherwise failing to provide competent legal counsel and advice in representing the interests of WaMu in connection with the Hartford Loan.

94.     As a direct and proximate result of, but not limited to, these actions, failures, breaches, and omissions of the Defendant, WaMu has sustained and continues to sustain substantial damages.

WHEREFORE, Plaintiff, JPMorgan Chase Bank, N.A., as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA from the Federal Deposit Insurance Corporation, acting as receiver for Washington Mutual Bank, FA and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C.§ 1821(d), demands judgment against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, jointly, severally and/or in the alternative for:

i.      compensatory damages,

ii.     consequential damages,

iii.    incidental damages,

iv.     pre and post-judgment interest,

v.      attorneys' fees, costs, and

vi.     such other and further relief as the Court deems appropriate.

## FIFTH COUNT - BREACH OF CONTRACT
### (Hartford Loan)

95.     The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

96.    Defendant agreed to represent WaMu as its legal counsel in connection with the Hartford Loan.

97.    Upon information and belief, the terms of the Defendant's engagement included, but were not limited to, those terms set forth in paragraph 10 of this Complaint.

98.    Defendant received compensation for his services in representing WaMu in connection with the Hartford Loan.

99.    Defendant breached the terms of his representation of WaMu in connection with the Hartford Loan as a result of, but not limited to, those breaches set forth in paragraph 89 of the Fourth Count of this Complaint.

100.    As a direct and proximate result of the aforesaid breaches by Defendant, WaMu has incurred, and continues to incur substantial damages.

WHEREFORE, Plaintiff, JPMorgan Chase Bank, N.A., as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA from the Federal Deposit Insurance Corporation, acting as receiver for Washington Mutual Bank, FA and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C.§ 1821(d), demands judgment against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, jointly, severally and/or in the alternative for:

      i.      compensatory damages,

      ii.     consequential damages,

     iii.     incidental damages,

     iv.     pre and post-judgment interest,

      v.     attorneys' fees, costs, and

     vi.     such other and further relief as the Court deems appropriate.

## SIXTH COUNT- BREACH OF FIDUCIARY DUTY
### (Hartford Loan)

101.    The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

102.    Defendant agreed to represent WaMu as its legal counsel in connection with the Hartford Loan.

103.    As legal counsel to WaMu, Defendant owed a fiduciary duty to WaMu at all times relevant to this matter.

104.    Defendant violated that fiduciary duty as a result of, but not limited to, those breaches set forth in paragraph 89 of the Fourth Count of this Complaint.

105.    Defendant's breaches have directly and proximately caused harm to WaMu.

106.    Defendant's actions, and omissions, were careless, reckless and without regard for WaMu's rights as its client.

WHEREFORE, Plaintiff, JPMorgan Chase Bank, N.A., as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA from the Federal Deposit Insurance Corporation, acting as receiver for Washington Mutual Bank, FA and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C.§ 1821(d), demands judgment against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, jointly, severally and/or in the alternative for:

      i.      compensatory damages,

      ii.     punitive damages,

     iii.    consequential damages,

     iv.    incidental damages,

      v.     pre and post-judgment interest,

     vi.    attorneys' fees, costs, and

vii.     such other and further relief as the Court deems appropriate.

**SEVENTH COUNT**
**(JOSEPH KOHEN, AND JEROME SHAPIRO)**

107.     The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

108.     Defendant alleges by way of defense and affirmative claims that Third Party Defendants, Kohen and Shapiro were negligent and/or committed fraud.

109.     JPMorgan maintains, and therefore avers, that said Third-Party Defendants' alleged negligence and/or fraud does not obviate or reduce Defendant's liability to JPMorgan.

110.     In the alternative, and without waiver of any claims of JPMorgan against Defendant, in the event the Court finds that said Third Party Defendants' negligence and/or fraud obviates or reduces Defendant's liability to JPMorgan, said Third Party Defendants are directly liable to JPMorgan.

WHEREFORE, Plaintiff, JPMorgan Chase Bank, N.A., as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA from the Federal Deposit Insurance Corporation, acting as receiver for Washington Mutual Bank, FA and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C.§ 1821(d), demands judgment against the Kohen and Shapiro, jointly, severally and/or in the alternative for:

i.       compensatory damages,

ii.      punitive damages,

iii.     consequential damages,

iv.     incidental damages,

v.      pre and post-judgment interest,

vi.     attorneys' fees, costs, and

vii.    such other and further relief as the Court deems appropriate.

## EIGHTH COUNT
### (SUCCESSFUL TITLE, AND CHICAGO TITLE)

111.    The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

112.    Defendant sets forth in his Third Party Complaint various facts which allege that Successful, as the agent for Chicago, exercised its apparent authority to mark-up certain title policies and that therefore Successful and Chicago were negligent and/or committed fraud which resulted in damages.

113.    JPMorgan maintains, and therefore avers, that said Third Party Defendants' alleged negligence and/or fraud does not obviate or reduce Defendant's liability to Plaintiff.

114.    In the alternative, and without waiver of its claims of liability and damages against Defendant, to the extent that the Court finds that said Third Party Defendants' negligence and/or fraud obviates or reduces Defendant's liability to JPMorgan, said Third Party Defendants are directly liable to JPMorgan.

115.    To the extent that the Court finds that Successful acted as the agent for Chicago, and bound Chicago for title coverage, Chicago is liable to JPMorgan for title insurance coverage..

WHEREFORE, Plaintiff, JPMorgan Chase Bank, N.A., as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA from the Federal Deposit Insurance Corporation, acting as receiver for Washington Mutual Bank, FA and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C.§ 1821(d), demands judgment against the Successful and Chicago, jointly, severally and/or in the alternative for:

    i.       compensatory damages,

    ii.      declaratory relief,

    iii.     punitive damages,

    iv.     consequential damages,

    v.      incidental damages,

    vi.     pre and post-judgment interest,

    vii.    attorneys' fees, costs, and

    vii.    such other and further relief as the Court deems appropriate.

Respectfully submitted,

ARCHER & GREINER,
A Professional Corporation
Attorneys for Plaintiff

BY: _____
    STEPHEN M. PACKMAN

One Centennial Square
Haddonfield, NJ  08033
(856) 795-2121
(856) 673-7078

and

2 Penn Plaza, Suite 1500
New York, New York 10121

Dated:  October 15, 2009

3122864v3

22